MARGARET COUNTY, ADMINISTRATRIX, v. THE PACIFIC COAST BORAX COMPANY ET AL.

Argued November 13, 1901—Decided January 13, 1902.

In an action for damages under the Death act, a writ of summons, tested December 12th, 1901, was delivered by the attorney of the plaintiff to the sheriff upon December 14th, the last day upon which the action could be commenced, with instructions to serve the same later when advised by the plaintiff. The defendant pleaded specially that the action had not been commenced within the period prescribed by the statute. A special verdict was returned as to this plea. *Held*—

1. A suit is begun when process, duly tested and issued, has been put in motion to be served.

2. The question of the due commencement of an action under the Death act is probably raised by a plea in bar.

On motion to enter judgment upon *postea* showing a special verdict upon a special plea.

*Postea.*—"Afterwards, that is to say, at a Circuit Court held at Jersey City in and for the county of Hudson, on the second Tuesday of September, A. D. 1901, by Gilbert Collins, one of the associate justices of the Supreme Court of the State of New Jersey, according to the form of the statute in such case made and provided, come as well the plaintiff, Margaret County, administratrix, &c., of Dennis County, de-

ceased, as the defendants the Pacific Coast Borax Company, the Pacific Borax and Redwoods Chemical Works (Limited) and Borax Consolidated (Limited), by their respective attorneys within mentioned; and the jurors of the jury between the parties aforesaid summoned also come, who, as well to assess the damages of the said plaintiff against the said defendant John C. Gerhardt (a *nolle prosequi* having been entered as against the defendant Edward McGee), as to speak the truth of the matters within contained, are duly chosen, tried and sworn. And thereupon, after evidence being given in behalf of the said plaintiff, and her case rested, the said justice being of opinion that no cause of action has been established against the defendants the Pacific Borax and Redwoods Chemical Works (Limited) and Borax Consolidated (Limited), orders that as to them the said plaintiff be nonsuited; and the jurors aforesaid, on their oaths aforesaid, as to the first issue joined between the said plaintiff and the defendant the Pacific Coast Borax Company, say that the said defendant the Pacific Coast Borax Company, together with the defendant John C. Gerhardt, are guilty of the torts above laid to their charge, and they assess the damages of the said plaintiff and against the said defendants John C. Gerhardt and the Pacific Coast Borax Company, by reason of the commission of such torts, over and above the costs and charges by the said plaintiff in and about her suit in this behalf expended at the sum of twenty-five hundred dollars, and for these costs and charges six cents.

"And as to the second issue joined between the said plaintiff and the defendant the Pacific Coast Borax Company, the jurors aforesaid, on their oaths aforesaid, say that the said Dennis County died on the fifteenth day of December, A. D. 1899; that on the fourteenth day of December, A. D. 1900, the attorney for the said plaintiff delivered to the sheriff of the county of Hudson the summons for the defendant the Pacific Coast Borax Company—which summons included also the defendants the Pacific Borax and Redwoods Chemical Works (Limited), the Borax Consolidated (Limited), John C. Gerhardt and Edward McGee—in this action, duly signed

and sealed, tested December 12th, 1900, returnable December 26th, 1900, with instructions to the sheriff to serve the same later when advised by the plaintiff; that said attorney did not then know upon what person such summons could be served, the said defendant being a corporation of the State of California, and informed the sheriff that he would instruct him later upon whom to make such service; that such instruction was given on January 4th, 1901, as soon as plaintiff's attorney ascertained who was the agent of the company in this state to serve; and that on January 8th, 1901, such sheriff made service of such summons, changing its return day to January 15th, 1901; that at the same time, with the delivery to the sheriff of the summons above mentioned, there were delivered to the sheriff—

"(1) A summons by the plaintiff against the Pacific Borax and Redwoods Chemical Works (Limited), the Borax Consolidated (Limited), John C. Gerhardt and Edward McGee, which was served on December 15th, 1900.

"(2) A summons against the Pacific Borax and Redwoods Chemical Works (Limited) and John C. Gerhardt and Edward McGee, to be served later when advised by the plaintiff.

"(3) A summons against the Borax Consolidated (Limited), John C. Gerhardt and Edward McGee, to be served later when advised by the plaintiff.

"That no instructions were given later as to summons Nos. 2 and 3, and the same have not been served. But whether or not upon these facts this action against the Pacific Coast Borax Company was commenced within twelve calendar months after the death of the said Dennis County, the jurors aforesaid are altogether ignorant and thereupon they pray the advice of the said Supreme Court. And if to the said court it shall seem from the facts aforesaid that said action was commenced within twelve calendar months after said death, then they find that it was commenced within such time; but if it shall seem to said court from the facts aforesaid that said action was not commenced within twelve calendar months after said death, then they find that it was not commenced within such time."

Before Justices GARRISON, GUMMERE and COLLINS.

For the plaintiff, *Thomas F. Noonan.*

For the defendants, *William D. Edwards.*

The opinion of the court was delivered by

GARRISON, J.   In an action brought to recover damages under the Death act the defendant, a foreign corporation, pleaded specially that the action had not been commenced against it within twelve calendar months after the death of the plaintiff's intestate, which occurred upon the 14th day of December, 1900.   The *postea* narrates that as to this plea the jury found specially that upon December 14th, 1901, the writ of summons, tested December 12th, 1901, was delivered by the attorney of the plaintiff to the sheriff of Hudson county, with instructions to serve the same later when advised by the plaintiff, and that such advice was not given to the sheriff until after the expiration of the time within which the action against the defendant could be commenced.   The *postea* is given in full in the prefatory statement.   Upon this motion for leave to enter judgment upon this *postea* the question is, was the action commenced against the defendant within twelve calendar months after the death of the plaintiff's intestate?

In the opinion delivered by Chief Justice Hornblower, in *Whitaker* v. *Turnbull,* 3 *Harr.* 172, it is said: "That when a writ is issued out of the office of the clerk or of the attorney acting, as is usually the practice in this state (at least permissibly), as the agent or deputy of the clerk, in good faith, for the purpose of being served or proceeded on, and that purpose is not afterwards abandoned, it is, for all material purposes, the actual commencement of the suit."   This language has been approved in every subsequent opinion that has dealt with the subject, Chief Justice Beasley saying of it, in *Lynch* v. *Erie Railroad Co.,* 28 *Vroom* 4: "This is undoubtedly the rule of the old law."

The present case differs from all that have preceded it in our reports in that in them the question arose upon writs that

had been retained by the attorneys in their own possession, whereas here the writ was delivered to the sheriff in time, accompanied, however, by the instructions found by the jury to have been given. So that the precise question now presented is whether, by force of these instructions, the attorney of the plaintiff retained such control over the service of the writ that the purpose to commence the suit was not evinced within the prescribed period of time.

.The question in this form is one of first impression in this court, and to that extent must be dealt with upon principles capable of general application.

At common law the commencement of a civil suit involved the concurrent action of the attorney who purchased the writ on behalf of his client and of the clerk who issued it on behalf of the court. Thus the "suing out," as it was significantly called, of the original writ was a well-defined step in the process by which a defendant was brought into court. Therefore it was said by Chief Justice Beasley, in the case above cited: "At common law a suit was begun upon the purchase of the writ and that process implied the taking the writ out of the office for immediate service." Most of the controversy that has arisen from our modern practice of allowing the plaintiff's attorney to issue the process of the court as the agent of the clerk is due to the fact that, owing to the merger of these two previously distinct functions, the actual issuance of the writ has ceased to have the significance it had at common law and upon which the old rule was founded. The point to be determined is the same, but the method of its determination must be different. To harmonize the old rule of practice with the existing practice the parts previously played by the two distinct agencies should be so far recognized as to require that. the attorney for the plaintiff, when acting for the clerk, shall stand toward his own client and toward the actual bringing of the suit as he stood when at common law he had purchased the writ and taken it out of the office for immediate service.

This is the rationale of the rule; how this attitude of the attorney shall be evinced is the practical question. The act of placing the process in the hands of the proper officer for·

service upon the defendant would seem to afford a simple and conclusive test of the purpose for which the writ was issued, and, as such, has much to commend it as a practical rule. The decisions, however, of our own courts, as well as elsewhere, preclude us from treating this branch of the law as an open question. In one case (*Updike* v. *Ten Broeck, 3 Vroom* 105) the testing of the writ by the attorney for the purpose of delivery to the sheriff at some future time was held to constitute the commencement of the action. In another case, already cited (Whitaker *v.* Turnbull), the writ was on its way to the sheriff by the hands of the attorney, who, meeting the defendant, presented it to him and delayed delivering it to the sheriff upon certain promises of the defendant. This was held to be the actual commencement of the suit, the process having been subsequently delivered to the sheriff out of time. In Lynch *v.* Erie Railroad Co., it is true, the rule laid down by the former of these decisions was so far modified as to require something more than the mere testing and sealing of the writ in order to constitute the commencement of the suit. What that "something more" is the decision in question does not state; but it is evident from the context that it must be something capable of evincing that the writ is actually out for the purpose of being served on the defendant. "Out for immediate service" is the language of Chief Justice Beasley; "for the purpose of being served" is the language of Chief Justice Hornblower, in the earlier case; "actually put in motion to be served" is the expression of Mr. Justice Elmer, in his dissent from the prevailing opinion in Updike *v.* Ten Broeck.

The rule deducible from this course of decisions is, perhaps, best summarized in the language last quoted, viz., that a suit is begun when process, duly tested and issued, is actually put in motion for the purpose of being served.. Whatever be the phraseology, the point to be guarded is that the repose intended to be granted to defendants and to the public by statutes of limitation shall not be dependent upon either the will or the diligence of the party whose interests are adverse to the policy of the law.

When we come to apply this rule to the facts contained in

this special verdict we find that they do not warrant a conclusion adverse to the due issuance of this writ. The most that can be said is that if the burden was upon the plaintiff to prove that her suit was begun within the statutory period she could not recover upon this verdict. That burden, however, is not upon the plaintiff. The record shows that the declaration, which lacked such an averment, was not demurred to, but, on the contrary, that a plea was interposed setting up that the suit had not been so begun. Upon the trial of the issue thus tendered the *teste* of the writ appeared in evidence. It having thus appeared that process bore *teste* as of a date prior to the running of the limitation, another statutory provision becomes operative in dealing with this special verdict. By section 43 of the Practice act the *teste* of writs and process is made *prima facie* evidence that the process was issued on such day, but such date may be disproved whenever the same shall come in question. *Gen. Stat., p.* 2540. The jury has found as a fact the date of this summons, hence, by force of this statutory regulation, the burden is upon the defendant to overcome the *prima facie* effect of the *teste* of the summons, either by showing that it was antedated or that it was not issued in good faith and put in motion to be served. This, as we have seen, has not been done. The case therefore, upon this statute and upon the rule stated by Chief Justice Hornblower, stands thus: The suit was commenced upon the day the process was issued in good faith for the purpose of being served, of which day of issuance the *teste*, in the absence of proof to the contrary, is *prima facie* evidence.

It remains to consider whether this question was properly raised by plea, or whether, as was suggested upon the argument, it should have been brought before the court by a motion to set aside the summons. I think that plea was the proper method. Not only is the analogy of the statute of limitations in favor of such pleading, but the frame of this remedial statute also leads to the same result. Indeed, the special limitation is so closely related to the statutory remedy given as to be a part of it; it is created solely with the object of qualifying the right of action. The remedy is given sub-

ject to the limitation. Whether it ought to appear affirmatively on the face of the declaration that the statute had in this respect been complied with is not now before us, but obviously, if nothing appear upon the subject, the defendant may, by appropriate pleading, raise the issue of fact in bar of the action.

The plaintiff is entitled to judgment.·